## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**TIMOTHY RAY BURTON**                                                     **PETITIONER**
**ADC #154389**

**V.**                              **NO. 4:24-cv-741-DPM-ERE**

**DEXTER PAYNE Director,**
**Arkansas Division of Correction**                           **RESPONDENT**

## <u>RECOMMENDED DISPOSITION</u>

This Recommendation ("RD") has been sent to United States District Judge D.P. Marshall Jr. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include their factual or legal basis, and be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact, and Judge Marshall can adopt this RD without independently reviewing the record.

## I.    Introduction

Timothy Ray Burton, an inmate at the Cummins Unit of the Arkansas Division of Correction, filed a petition for habeas corpus (*Doc. 1*) and addendum (*Doc. 4*) pursuant to 28 U.S.C. § 2254.  For reasons that follow, the petition should be denied and dismissed with prejudice as time barred or, alternatively, because each claim is either procedurally defaulted or not subject to federal habeas review under 28 U.S.C. § 2254(d).

## II.    Procedural Background

On August 2, 2022, a Saline County, Arkansas jury convicted Mr. Burton of fleeing and possession of firearms by certain persons. *Burton v. State*, 2023 Ark. App. 271, 1 (2023). He was sentenced as a habitual offender to consecutive terms of 180 and 360 months in prison. *Id*.

Mr. Burton appealed, asserting insufficient evidence. *Id*. On May 10, 2023, the Arkansas Court of Appeals affirmed Mr. Burton's convictions but remanded with instructions to correct the sentencing order to reflect his status as a habitual offender. *Id*. at 7.

Mr. Burton did not file a petition for rehearing in the Arkansas Court of Appeals; nor did he pursue a petition for review in the Arkansas Supreme Court.

On July 13, 2023, Mr. Burton filed a petition for post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure, asserting that his trial attorney rendered ineffective assistance of counsel in several respects. *Doc. 10-6*. On August 28, 2023, the trial court denied Mr. Burton's Rule 37 petition. *10-8*.

On April 26, 2024, Mr. Burton filed notice of appeal from the August 28, 2023 order denying his Rule 37 petition. *Doc. 17-11*. He wrote the phrase "Nunc Pro Tunc" at the top of the appeal form and the following note at the bottom of the first page: "The Appellant never received any Order [or] Notice of the denial until 4-17-2024." *Id*.

By letter dated July 22, 2024, the Arkansas Supreme Court, Office of the Criminal Coordinator, advised Mr. Burton: "The Clerk of the Arkansas Court of Appeals has declined to lodge the record on appeal because you did not file the notice of appeal with the circuit clerk within thirty days of the date the order was entered as required by the rules of procedure. The notice of appeal was due to be filed . . . no later than September 27, 2023."[1]

On August 26, 2024, Mr. Burton filed the § 2254 petition now before the Court,[2] asserting the following grounds for relief: (1) the State failed to prove his identity as the perpetrator of the crimes for which he was convicted; (2) the State withheld evidence of items seized from the Dodge Charger in violation of *Brady v. Maryland*, 373 U.S. 83 (1963);[3] (3) the State withheld crime scene evidence including latent fingerprints and D.N.A. violation of *Brady*; (4) he is actually

---

[1] See *Arkansas v. Burton*, No. 63CR-21-817 (Saline Cty. Cir. Ct), accessible at https://caseinfo.arcourts.gov/cconnect/PROD/public.

[2] The Clerk of Court received Mr. Burton's petition for filing on August 30, 2024, and entered it on the docket that day. However, giving Mr. Burton the benefit of the "prison mailbox rule," the petition is deemed filed on the date he placed it in the prison mail system: August 26, 2024. See *Doc. 2 at 23-24* (declaring under penalty of perjury that the petition was placed in the prison mailing system on 26 August 2024); *Ford v. Bowersox*, 178 F.3d 522, 523 (8th Cir. 1999) (stating that for purposes of § 2244(d)(1), a *pro se* prisoner's habeas petition is filed on the date it is delivered to prison authorities for mailing); see also Rule 3(d) Rules Governing § 2254 Cases in the United States District Courts.

[3] In connection with Claims 3 and 4, which assert *Brady* violations, Mr. Burton alleges that the prosecution also violated Arkansas procedural and discovery rules. However, federal habeas corpus relief is not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

innocent; and (5) the State presented insufficient evidence that he possessed a firearm. *Doc. 2*.

On December 12, 2024, Respondent filed a response, asserting only that the petition is time-barred under 28 U.S.C. § 2244(d)(1). *Doc. 10*.

On January 29, 2025, Mr. Burton filed a reply, asserting that his petition "should not be time barred due to [an] unforeseen act (lost mail)." *Doc. 15 at 8*.

On March 26, 2025, at my direction (*Doc. 16*), Respondent filed a supplemental response that addresses all allegations in the petition and asserts additional grounds for dismissal: (1) claims 1 through 4 are inexcusably procedurally defaulted; and (2) state court adjudication of claim 5 is due deference under 28 U.S.C. § 2254(d).

## III.  Factual Background

In affirming Mr. Burton's convictions for fleeing and possession of firearms by certain persons, the Arkansas Court of Appeals summarized the trial evidence as follows: !!

> Sergeant Jeffery Plouch with the Arkansas State Police, who was the supervisor for Saline County, testified that on the night of August 1, 2021, he was on Interstate 30 in Saline County when he initiated a traffic stop on a white Dodge Charger. The Charger would not pass Plouch even when he slowed down to approximately fifty miles an hour in a seventy-mile-an-hour zone. Plouch pulled over and then returned to the interstate to catch up to the Charger. The driver of the Charger "hit the brakes," so Plouch could not get behind him. Plouch perceived that the Charger did not want the trooper behind him and ran the license plate through ACIC and NCIC, which returned on a 2008 white

Charger. Because troopers drive Chargers, Plouch knew that the model he was following was newer than a 2008 model. When Plouch turned on his blue lights, the Charger stopped on the right shoulder, briefly put the car in park, and then accelerated and did a U-turn. The Charger proceeded to drive eastbound in the westbound lanes of the interstate.

Plouch notified other nearby units in the area. The Charger exited the interstate and went the wrong way down a service road. Trooper Kade Cash performed a PIT (precision intervention technique) maneuver at Alcoa Road and Highway 5, which caused the Charger to spin out into construction. This was done because the Charger had traveled in the wrong direction and at speeds exceeding one hundred miles an hour in forty-five-mile-an-hour zones, which endangered the public. Trooper Trevor Stevenson arrived, and they attempted to box the Charger from proceeding, and Plouch also bumped the Charger with his vehicle to stop it. The Charger proceeded to travel on Highway 5 before turning south on Alcoa Road. Plouch then performed a second PIT maneuver, which caused the Charger to spin to the edge of the roadway. Corporal Trent Behnke arrived on the scene. Trooper Cash then rammed the passenger side of the vehicle to disable it. Plouch explained that PIT maneuvers had been attempted, and it was time to stop the driver. Troopers drew their guns and ordered the driver out of the vehicle. Instead, the Charger accelerated in reverse and drove southbound on Alcoa Road, made a quick turn into a car dealership, drove into a ditch, and overturned.

Appellant attempted to flee on foot and was apprehended by Trooper Stevenson and Corporal Behnke. Appellant initially resisted being placed in handcuffs but eventually complied. The car was searched after being pulled out of the ditch. Fourteen firearms were found in the trunk, including a 7.0 mm large caliber rifle, three 12-gauge shotguns, two multi-caliber rifles, a 20-gauge shotgun, a .308 rifle, a Colt .45 revolver, a .38-caliber pistol, three 9 mm pistols, and a .22-caliber pistol. A check of the Charger's VIN revealed that it had been reported stolen two days before in North Little Rock. The license plate, which had expired eight months earlier and was registered to a couple from Murfreesboro, did not match the Charger.

On cross-examination, Plouch stated that he had not made contact with the female owner. He testified that once appellant was arrested, Plouch

5

had no further involvement, although he was aware that a woman named Whitney Reynolds had claimed ownership of the weapons. In addition to Sergeant Plouch, Trooper Cash, Trooper Stevenson, and Corporal Behnke all testified to their involvement in pursuing the Charger as described by Plouch. In addition to the firearms, women's clothing was found in the trunk. The troopers' dashcam videos were admitted into evidence and played for the jury.

*Burton v. State*, 2023 Ark. App. 271, 2–4 (2023).

## IV.    Discussion

### A.    Mr. Burton's Petition is Time Barred

#### 1.    The One-Year Statute of Limitation  For Mr. Burton's Petition Began Running June 9, 2023

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitation for a state prisoner's federal habeas petition challenging a state conviction. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of four alternative dates, and the applicable date in this case is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

On May 10, 2023, the Arkansas Court of Appeals affirmed Mr. Burton's convictions. Because Mr. Burton did not seek review by the Arkansas Supreme Court, his judgment of conviction became final when the time for seeking such review expired under state filing deadlines. *Gonzalez v. Thaler*, 565 U.S. 134, 137 (2012).

Mr. Burton's deadline for filing a petition for rehearing in the Arkansas Court of Appeals expired Monday, May 29, 2023. See Ark. Sup. Ct. R. 2-3(a) (requiring that a petition for rehearing be filed within eighteen calendar days from the date of decision); see also Ark. R. App. P. Crim. 17 (providing that when a filing deadline falls on a Saturday, Sunday, or legal holiday, it shall be extended to the next business day). Mr. Burton's deadline for filing a petition for review by the Arkansas Supreme Court expired ten days later on June 8, 2023, see Ark. Sup. Ct. R. 2-4(a) (effective July 1, 2019) (requiring a petition for review by the Arkansas Supreme Court be filed within ten calendar days after the end of the Court of Appeals rehearing period), and his judgment of conviction became final the next day, June 9, 2023, when he could no longer seek appellate review. See *Johnson v. Hobbs*, 678 F.3d at 610 & n.3 (8th Cir. 2022) (noting that state conviction became final the day after last day for filing a petition for review, when the defendant "could no longer seek review" from the Arkansas Supreme Court); *King v. Hobbs*, 666 F.3d 1132, 1135-36 & n.4 (8th Cir. 2012) (habeas statute of limitation  began running the day after the deadline for filing a petition for review with the Arkansas Supreme Court); Fed. R. Civ. P. 6(a)(1)(A) (excluding from the time computation the day of the event that triggers the time period).

Absent sufficient tolling or a showing of actual innocence, Mr. Burton had until Monday, June 10, 2024, to file a federal habeas petition.[4]

### 2. Statutory Tolling Paused the AEDPA Limitation Period From July 13 to September 27, 2023, Giving Mr. Burton Until August 23, 2024 to File a § 2254 Petition

The AEDPA limitation period is tolled "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). The one-year limitation period in Mr. Burton's case ran thirty-four days, from June 9, 2023 to July 13, 2023, when he filed a timely Rule 37 petition for postconviction relief, which tolled the AEDPA's one-year limitation period.

The trial court denied Mr. Burton's Rule 37 petition on August 28, 2023. Respondent asserts that because Mr. Burton did not appeal the denial of postconviction relief, the one-year clock resumed on August 28, 2023. *Doc. 10 at 6.* However, pursuant to Eighth Circuit precedent, which this Court is bound to follow, Mr. Burton's Rule 37 petition remained "pending" for AEDPA tolling purposes the entire time during which he could have, but did not, appeal the trial court's denial of

---

[4] Because June 8, 2024 fell on a Saturday, Mr. Burton had until Monday, June 10, 2024 to file his federal petition. Rule 6(a)(1)(C).

postconviction relief.[5] In Arkansas, a notice of appeal must be filed within thirty

days from entry of an order denying a Rule 37 petition. Ark. R. App. P. Crim. 2(a)(4).

The one-year federal limitation period should be considered tolled seventy-six days,

from the initiation of the postconviction proceedings on July 13, 2023 until

September 27, 2023 when the time for appeal expired. At that point, Mr. Burton had

331 more days, until Friday, August 23, 2024, to file a federal habeas petition,

making his petition filed August 26, 2024 three days late.

### 3.    Mr. Burton Is Not Entitled to Equitable Tolling

Mr. Burton argues that his petition should not be time barred "due to [an]

unforeseen act (lost mail)." *Doc. 15 at 8*. He states that he never received the trial

court's order denying his Rule 37 petition, and the prosecuting attorney eventually

notified him by letter that his petition had been denied. Mr. Burton does not say

when he received the prosecutor's letter, but the handwritten note on the bottom of

---

[5] In *Streu v. Dormire*, 557 F.3d 960, 966 (8th Cir. 2009), the Eighth Circuit reaffirmed its holding in *Williams v. Bruton*, 299 F.3d 981 (8th Cir. 2002), that an application for postconviction relief remains "pending" for AEDPA tolling purposes during the time for appeal, even if the petitioner does not appeal. Respondent points out that in *Evans v. Chavis*, 546 U.S. 189 (2006), issued three years prior to *Streu*, the Supreme Court held that the AEDPA limitations period was *not* tolled for a three-year interval between the denial of postconviction relief and the petitioner's filing a notice of appeal from that decision. However, *Evans* involved California's unique postconviction review scheme, which required that the petitioner: (1) file separate, original petitions for postconviction relief at each state court level; and (2) file each petition within a "reasonable" time after the lower court's adverse decision. *Evans* did not involve the present circumstances, where the petitioner did not appeal the denial of postconviction relief during a definite, statutorily prescribed period. In any event, it is assumed that the Eighth Circuit considered *Evans* in deciding *Streu*, and this Court is duty bound to follow precedential decisions of the Eighth Circuit.

his postconviction appeal form states that on April 17, 2024, he learned that his petition had been denied. *Doc. 17-11*.

The one-year limitation period for filing a § 2254 habeas petition may be equitably tolled if a petitioner demonstrates that: (1) he has been "pursuing his rights diligently," but (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). "The burden of demonstrating grounds warranting equitable tolling rests with the petitioner." *Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009) (citing *Pace v. DiGuglielm*o, 544 U.S. 408, 418 (2005)).

Assuming that lost mail qualifies as an extraordinary circumstance warranting equitable tolling, Mr. Burton is not entitled to the equitable remedy because he did not act with reasonable diligence in pursuing his rights. According to Mr. Burton, on July 22, 2024, when the Arkansas Supreme Court declined to lodge his untimely postconviction appeal, he had only two options: (1) file a § 2254 federal habeas petition, which has a one-year limitations period; or (2) file a state habeas petition, which has a three-year limitations period. *Doc. 15 at 6*.

Mr. Burton is mistaken about the options he had, and his *pro se* status and lack of knowledge about state procedural rules is no excuse. *Shoemate v. Norris*, 390 F.3d 595, 597-98 (8th Cir. 2004) (holding that a petitioner's misunderstanding of Arkansas rules, statutes, and the time limitations did not justify equitable tolling).

10

On April 17, 2024, when Mr. Burton learned that the trial court had denied his Rule 37 petition on August 28, 2023, 128 days remained in the AEDPA limitation period. At that point, he could have filed a motion seeking permission to file a belated postconviction appeal pursuant to Arkansas Rule of Appellate Procedure—Criminal 2(e). Rule 2(e) permits an appellant who failed to file a timely notice of appeal to move for a bleated appeal within eighteen months of the order denying postconviction relief. Upon such a motion, the Arkansas Supreme Court "may act upon and decide a case in which the notice of appeal was not . . . filed in the time prescribed, when a good reason for the omission is shown by affidavit." Ark. R. App. P.–Crim. 2(e)

In addition, at any time before the August 23, 2024 federal habeas deadline expired, Mr. Burton might have avoided AEDPA's time bar by filing a protective § 2254 petition in federal court and requesting a stay while he exhausted any available state court remedies.[6] *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (noting that a prisoner seeking state postconviction relief can avoid AEDPA's time bar by filing a protective petition in federal court and asking the federal court to stay and abey the proceedings until state remedies are exhausted). Mr. Burton had time and

---

[6] In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court recognized that when a federal habeas petition is "mixed" because it contains both exhausted and unexhausted claims, a district court has discretion to hold the exhausted claims in abeyance while the petitioner presents the unexhausted claims in state court.

opportunity to exhaust his state remedies and meet the AEDPA deadline, but he failed to do so.

### 4.    Gateway Actual Innocence Does Not Apply

Mr. Burton asserts that he is actually innocent because the state failed to present sufficient evidence identifying him as the perpetrator of the crimes. *Doc. 2 at 21-23*. To the extent that Mr. Burton asserts actual innocence as a gateway for consideration of his time-barred or procedurally defaulted claims, his argument fails because he offers no new, reliable evidence of his actual innocence.[7] Mr. Burton contends that the evidence at trial was insufficient to support his convictions, but the standard for a gateway actual innocence claim is "by no means" equivalent to the standard governing a claim asserting insufficient evidence. *House v. Bell*,  547 U.S. 518, 538–39 (2006). The actual innocence standard requires a federal court to assess how reasonable jurors would react to *new* evidence that the trial jury did not have before it, not the evidence presented at trial. *Id*.  Mr. Burton provides no new, reliable evidence of actual innocence to justify a merits review of his petition.

---

[7]  The Eighth Circuit has instructed that a gateway actual innocence claim must satisfy a two-part test: "First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial." *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001) (citing *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). "The evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Amrine v. Bowersox*, 128 F.3d 1222, 1230 (8th Cir. 1997). "Second, the petitioner must establish 'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Armine*, 238 F.3d at 1023 (quoting *Schlup*, 513 U.S. at 327)).

## B.    Claims 1, 2, 3, and 4 are Procedurally Defaulted[8]

Federal habeas relief is available to state prisoners only after they have "exhausted the remedies available" in state court. 28 U.S.C. §§ 2254(b)(1), (c). Before filing a federal habeas petition, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

The exhaustion requirement is technically satisfied when a state procedural rule makes state remedies unavailable. However, under the independent and adequate state ground doctrine, "[w]here a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992); *Abdullah v. Groose,* 75 F.3d 408, 411 (8th Cir.1996)). Thus, when a petitioner fails to fully exhaust a federal claim in state court and the time for doing so has expired, the claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Likewise, a federal claim is procedurally defaulted when resolved by a state court pursuant to a "firmly

---

[8] Because a mere three days prevents Mr. Burton's habeas petition from being timely filed, I elect to address Respondent's alternative arguments for dismissal.

established and regularly followed" state procedural rule or practice. *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991) (citations omitted).

A petitioner can obtain federal habeas review of a procedurally defaulted claim only if he can demonstrate: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law;[9] or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice, such as the conviction of one who is actually innocent.[10] *Coleman*, 501 U.S. at 750.

### 1.    Claims 1 and 4

Claims 1 and 4 assert the same thing: The prosecution failed to prove that Mr. Burton was the person who fled law enforcement on August 1, 2021 in a white Dodge Charger.[11] He argues that his convictions "cannot stand when there was no

---

[9] Cause for procedural default must be an external impediment that prevented the petitioner from complying with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, (1986). To demonstrate prejudice, a petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions . . . [such that he] was denied fundamental fairness at trial." *Id.* at 494 (internal quotation and punctuation omitted).

[10] For reasons previously explained, Mr. Burton does not meet the requirements for gateway actual innocence. See *supra* IV.A.4.

[11] Mr. Burton labels Claim 4: "Actual Innocence, someone else committed the crime." *Doc. 2, at 21*. The substance of the claim, however, attacks the sufficiency of evidence identifying him as the perpetrator of the crimes of conviction. It is not resolved whether a stand-alone actual innocence claim is even cognizable. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). In any event, Mr. Burton's failure to establish gateway actual innocence means that he cannot make the "extraordinarily high" showing that would be required to establish a free-standing actual innocence claim. *Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014) (citations omitted).

in-court identification of him as the perpetrator of any offense . . . . " *Doc. 2 at 22*. Mr. Burton presented the same claim on direct appeal, and the Arkansas Court of Appeals held that he failed to preserve the issue for appellate review by seeking a directed verdict on the fleeing charge as required under Rule 33.1(a) of the Arkansas Rules of Criminal Procedure. *Burton*, 2023 Ark. App. 271, at 7. The Court of Appeals noted that even if the claim were not procedurally barred, "there was dashcam video introduced from which the jury could have identified appellant." *Id*.

In Arkansas, a motion for a directed verdict is treated as a challenge to the sufficiency of evidence, and Rule 33.1(a) requires that the motion "be made at the close of the evidence offered by the prosecution and at the close of all evidence [, and] state the specific grounds therefore." The failure to challenge the sufficiency of the evidence at the times and in the manner prescribed by Rule 33.1(a) "will constitute waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment." Ark. R. Crim. P. 33.1(c). There is no question that Rule 33.1's specificity requirement was "firmly established and regularly followed" at the time of Mr. Burton's trial. *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (explaining that only a "firmly established and regularly followed state practice" can prevent review of a federal claim).

The Arkansas Court of Appeals resolved Mr. Burton's insufficiency of evidence claim on an adequate and independent state ground, and the claim is

therefore procedurally defaulted. Mr. Burton offers nothing to support a finding of cause and prejudice to excuse his procedural default. Nor does he provide new, reliable evidence of actual innocence to justify a merits review. Claims 1 and 4 should be dismissed, with prejudice

### 2.    Claims 2 and 3

In Claims 2 and 3, Mr. Burton asserts that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[12]  For Claim 2, he alleges that the State failed to disclose items seized from the Dodge Charger, including women's clothing, a black pouch containing 1.2 pounds of a crystal substance, and the identity of persons named on cards contained in two women's wallets. *Doc. 2 at 18*. For Claim 3, he alleges "from the time of [his] conviction until now, a trickle of post-trial disclosures [have] unearthed a troubling and striking pattern of deliberate police suppression of material evidence, . . . [including] sperm and 43 latent fingerprints lifted from the scene, none of which matched Petitioner." *Id*. at 20.

Under Arkansas law, an alleged *Brady* violation must be raised at trial and on direct appeal and is not cognizable in a Rule 37 petition. *Howard v. State*, 367 Ark.

---

[12] In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the Fourteenth Amendment's Due Process Clause commands the State to disclose favorable evidence in its possession or control that is *material* to guilt or punishment of a criminal defendant. There are three components to a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or has impeachment value; (2) the state must have suppressed the evidence, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

18, 27 (2006). Mr. Burton failed to present Claim 2 or 3 at trial or on direct appeal, he has no remaining non-futile state court remedies,[13] and he offers no facts or argument to support a finding of cause and prejudice to excuse his procedural default. The government's suppression of evidence may provide cause to excuse a procedural default but only where the suppression caused the petitioner's default. *Dansby v. Payne*, 47 F.4th 647, 659 (8th Cir. 2022). With respect to Claim 2, Mr. Burton knew about the items seized from the Dodge Charger well before trial, and the State's suppression did not cause his default.

In addition, Mr. Burton is unable to show prejudice, which requires that the suppressed evidence is "material" for *Brady* purposes. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Evidence is "material" within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *Turner v. United States,* 582 U.S. 313, 324 (2017) (quoting *Cone v. Bell*, 556 U.S. 449, 469–470 (2009)).

Considering the evidence presented at his trial, Mr. Burton cannot show that the evidence allegedly withheld was material. Officer Trevor Stevenson testified that he pursued and eventually apprehended Mr. Burton after watching him exit and run

---

[13] The Arkansas Supreme Court has recognized that *Brady* violations fall within a category of fundamental errors potentially eligible for a writ of coram nobis, but to qualify for that extraordinary and rare remedy, a petitioner must demonstrate a reasonable probability that the judgment of conviction would not have been rendered had the suppressed evidence been disclosed at trial. *Brown v. State*, 2022 Ark. 49, 5 (2022).

from the overturned Dodge Charger (*Doc. 17-7 at 160*), and Officer Trent Behnke

testified that after Mr. Burton fled, no other person remained in the vehicle. *Id. at*

*179.*  Finally, the Arkansas Court of Appeals noted that "there was dashcam video

introduced from which the jury could have identified appellant." *Burton v. State*,

2023 Ark. App. 271, 7 (2023).  Claims 2 and 3 should be dismissed, with prejudice.

### C.    The Arkansas Court of Appeal's Adjudication of Claim 5 is Due Deference Under 28 U.S.C. § 2254(d)

Section 2254(d) provides that when a state prisoner's federal claim has been

adjudicated on the merits in state court, a federal court "shall not" grant an

application for habeas relief unless the state courts' adjudication: "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court; [14] or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." [15] "The question under [the]

---

[14] A state court decision is "contrary to" clearly established federal law if the state court either "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

[15] The state court's factual findings are subject to a deferential standard of review and  presumed correct unless the petitioner can rebut those findings through "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also *James v. Bowersox*, 187 F.3d 866, 871 (8th Cir. 1999). Mr. Burton does not challenge the state appellate court's factual findings.

AEDPA is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—'a substantially higher threshold' for a prisoner to meet." *Shoop v. Twyford*, 1596 U.S. 811, 819 (2022) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

At trial, Mr. Burton moved for a directed verdict on the possession of firearms by certain persons charge. He stipulated that he had previously been convicted of a violent felony but argued that the evidence failed to show constructive possession. The trial court denied his motion, and he challenged that ruling on direct appeal arguing:

> that the firearms were in the trunk; no fingerprint testing was conducted to show that he handled the firearms; he made no statements indicating awareness of the firearms; he was not the registered owner of the vehicle; the license plate was registered to a couple in Murfreesboro and had been reported stolen by a female in North Little Rock; nothing found in the vehicle associated him with the vehicle; women's clothing was found in the vehicle; and officers testified that a female named Whitney Reynolds claimed the firearms found in the vehicle belonged to her.

*Burton v. State*, 2023 Ark. App. 271, 5 (2023).

The Arkansas Court of Appeals evaluated the merits of Mr. Burton's insufficiency of evidence claim according to the following standard:

> This court determines whether the verdict is supported by substantial evidence, direct or circumstantial. Substantial evidence is . . . forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. The credibility of witnesses is an issue for the fact-finder. The trier of

> fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence.

*Id.*, 2023 Ark. App. 271 at 4–5. The Arkansas Court of Appeals concluded that substantial evidence supported a guilty verdict, pointing out that Mr. Burton had exclusive control of a vehicle with fourteen firearms in the trunk and the details of his extensive and prolonged flight from law enforcement. The court noted: "[A]n accused's suspicious behavior coupled with proximity with the contraband is clearly indicative of possession. In addition, flight following the commission of an offense is a factor that may be considered with other evidence in determining guilt." *Id.*, 2023 Ark. App. 271 at 6-7 (cleaned up).

In affirming Mr. Burton's conviction, the Arkansas Court of Appeals employed a standard arguably more favorable to Mr. Burton than the standard endorsed by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Arkansas Court of Appeals adjudicated Mr. Burton's claim reasonably, and it decision is entitled to deference under § 2254(d). Claim 5 should be dismissed, with prejudice.

**V.    Conclusion**

IT IS THEREFORE RECOMMENDED THAT:

1.    Petitioner Timothy Ray Burton's § 2254 petition for writ of habeas corpus (*Doc. 2*) be DISMISSED with prejudice.

2.    A certificate of appealability be DENIED. See 28 U.S.C. § 2253(c)(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

Dated 18 July 2025.

_____
UNITED STATES MAGISTRATE JUDGE